IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

H&R BLOCK TAX SERVICES LLC,

    Plaintiff,

v.

DALE E. HAWORTH *a/k/a* DALE
EMMETT HAWORTH, II,

    Defendant.

Case No.: 4:15-CV-00211

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on the Motion for Default Judgment ("the Motion") of Plaintiff H&R Block Tax Services LLC ("Plaintiff" or "H&R Block"), filed September 21, 2015. Having considered the Motion, the evidence presented through the affidavits submitted with the Motion, and the additional submissions, arguments and evidence submitted by all parties in this action, the Court finds that Plaintiff has demonstrated its entitlement to default judgment. Plaintiff's Motion is therefore GRANTED.

### I.    PROCEDURAL HISTORY

On March 24, 2015, Plaintiff filed its Verified Complaint in this case, alleging that Defendant Dale E. Haworth ("Defendant" or "Haworth") breached the three Franchise License Agreements (collectively with all amendments and addenda thereto, the "FLAs") and two Conversion Agreements (collectively, the "Conversion Agreements") between the parties, which are attached as Exhibits A and B to the Verified Complaint, and authenticated thereby. Plaintiff filed a Motion for Temporary Restraining Order (the "TRO Motion") contemporaneously with the Verified Complaint and, the next day, filed a Certification of Notice in Support of the TRO

Motion (ECF No. 005) detailing and attaching evidence of the ways in which it supplied notice to Defendant of these proceedings. Plaintiff timely served process upon Defendant by hand delivery to his residence, including service of the Summons, Verified Complaint, TRO Motion and all other filings in the case to date.

On March 26, 2015, the Court held a telephonic hearing on the TRO Motion filed by Plaintiff. Defendant personally appeared by telephone to oppose that Motion. The Court granted Plaintiff's TRO Motion over Defendant's objection. (ECF No. 008). Thereafter, the parties stipulated to an entry of a preliminary injunction against Defendant, which the Court entered on April 2, 2015. (ECF Nos. 012, 013).

Though Defendant's twenty-one day deadline to file a response to Plaintiff's Verified Complaint has passed, Defendant has not answered or otherwise responded to the Verified Complaint. Defendant, in fact, has not appeared or participated in this litigation at all since the Court's April 2, 2015 entry of the Preliminary Injunction, despite multiple attempts by Plaintiff to contact Defendant to determine whether he intends to defend the pending suit against him. Thus, on September 2, 2015, the Clerk of Court entered default against Defendant. (ECF No. 016).

Plaintiff now moves the Court to enter judgment against Defendant on Plaintiff's claims. For the reasons discussed herein, that Motion is GRANTED.

## II.     JURISDICTION AND CHOICE OF LAW

"Personal jurisdiction over a non-resident defendant may be obtained by consent or by waiver." *Whelan Security Co., Inc. v. Allen*, 26 S.W.3d 592, 595 (Mo. App. 2000) (citing *Chase Third Century Leasing Co. Inc. v. Williams*, 782 S.W.2d 408, 411 (Mo. App. 1989)). Personal jurisdiction is an individual right, and that right may be waived in advance through a forum

selection clause contained in a contract between the parties. *Id.* Under Missouri law, contractual choice-of-law provisions are enforced. *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320 (8th Cir. 2001) (citing *Rheem Manuf. Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 339 (Mo. App. 2000)).

In Section 27 of the FLAs between the parties in this case, Defendant agreed that the FLAs "and all claims arising from the relationship between [H&R] Block and [Defendant] shall be governed by the internal laws of the State of Missouri, without regard to its conflict of law rules." Defendant further waived any objections to the jurisdiction or venue of a federal or state court in Jackson County, Missouri. *Id.* Thus, Defendant has both stipulated and consented to Missouri law as the choice of law and to personal jurisdiction in this Court.

## III.  PLAINTIFF HAS DEMONSTRATED ITS ENTITLEMENT TO A DEFAULT JUDGMENT

Where, as here, the Clerk of Court has entered a default, the entry of default judgment is committed to the sound discretion of the Court. *Fingerhut Corp. v. Ackra Direct Marketing Corp.*, 86 F.3d 852, 856 (8th Cir. 1996). Among other circumstances, this Circuit has recognized that entry of a default judgment for failure to defend is appropriate when a party's conduct includes "willful violations of court rules, contumacious conduct, or intentional delays" – such as where the party "total[ly] fail[s] to participate in the litigation" for several months. *Id.* at 856-57. Where a "defendant has filed no response or taken any other action indicating an intent to respond," the defendant is considered a "totally unresponsive party," and "default judgment against the defendant is appropriate" under Fed. R. Civ. P. 55(b). *United States v. Gant*, 268 F. Supp. 2d 29, 32-33 (D.D.C. 2003).

Moreover, a defaulting party is deemed to have admitted all well-pleaded factual allegations in the complaint that do not relate to the amount of damages. *Marshall v. Baggett*,

616 F.3d 849, 852 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). As the Eighth Circuit has explained, "[i]f the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true. If the default is established, the defendant has no further standing to contest the merits of plaintiff's right to recover." *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) (quoting 3 Barron & Holtzoff, Federal Practice & Procedure § 1216, pp. 85-86 (1958)).

The Court finds that Defendant has failed to engage in this proceeding for several months, having failed to timely respond to Plaintiff's Verified Complaint or to otherwise participate in this litigation despite multiple efforts by Plaintiff to contact Defendant. *See Fingerhut*, 86 F.3d at 856-57 (finding default judgment warranted where the defaulting party failed to participate in litigation for several months); *see also Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973) (affirming entry of default judgment against former franchisee who failed to file timely response to complaint by franchisor). Defendant has offered no explanation for his failure to participate in this action, and there is no indication Defendant intends to respond to the Verified Complaint or otherwise defend the action against him. *See Gant*, 268 F. Supp. 2d at 32-33.

The Court further finds that, because Defendant is in default in this case, Plaintiff's well-pleaded factual allegations are deemed admitted and Defendant's liability to Plaintiff is established. *See Marshall*, 616 F.3d at 85; *Brown*, 477 F.2d at 531. As this Court found in issuing the Temporary Restraining Order in this case, Plaintiff's Verified Complaint establishes

4

that Defendant has violated the reasonable, enforceable terms of the Agreements between the parties. *See* March 26, 2015 Order (ECF No. 008) generally and at 2. Specifically, the Verified Complaint establishes that Defendant breached the "Limitations on Competition and Disclosure" contained in both the FLAs and Conversion Agreements when, after termination of the FLAs, Defendant opened a competing tax services business in the very office location where he had previously operated an H&R Block franchise office, using the same telephone number, office lease, and other assets he had agreed to assign to Defendant upon termination of the FLAs. Ver. Compl. ¶¶ 42-67.

Thus, both the law and the record of this case support entry of judgment against Defendant on Plaintiff's claims.

## IV.   PLAINTIFF IS ENTITLED TO THE REQUESTED RELIEF

### A.   Permanent Injunctive Relief

Plaintiff prays for entry of judgment permanently enjoining Defendant to require his specific performance of the Agreements and to prohibit him from violating the terms of the same. The standard for issuing permanent injunction is essentially the same as that for issuing a temporary restraining order or preliminary injunction, with the exception that a permanent injunction requires a showing of actual, rather than a substantial likelihood of, success on the merits. *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008); *PCTV Gold, Inc. v. Speednet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007). Thus, a party is entitled to a permanent injunction if it shows: (1) actual success on the merits; (2) it will suffer irreparable harm unless the injunction is issued; (3) the threatened injury to it outweighs whatever damages a proposed injunction may cause the opposing party, and (4) the injunction, if issued, would not

be adverse to the public interest. *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008).

### 1. Success on the Merits

The Court finds that Plaintiff has demonstrated actual success on the merits. As discussed above, having defaulted in this case, Defendant is deemed to have admitted all of the factual allegations of Plaintiff's Verified Complaint – including that Defendant has breached the reasonable, enforceable terms of the FLAs and Conversion Agreements between the parties – and no longer has standing to contest Plaintiff's right to recovery thereon. Fed. R. Civ. P. 8(b)(6); *Marshall*, 616 F.3d at 852; *Brown*, 477 F.2d at 531. Thus, in light of Defendant's default, Plaintiff's Verified Complaint establishes Defendant's liability to Plaintiff in this case.

### 2. Irreparable Harm

Plaintiff has sufficiently shown that it would suffer irreparable harm in the event a permanent injunction is not issued. First, Defendant agreed that H&R Block will suffer irreparable harm if the terms of the restrictive covenants are violated. Irreparable harm also properly is presumed where, as here, there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used. *See Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74-75 (Mo. 1985) (en banc); *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *Moore Business Forms, Inc. v. Wilson*, 953 F. Supp. 1056, 1062 (N.D. Iowa), *aff'd* 105 F.3d 663 (8th Cir. 1996).

If the Court does not intervene to permanently enjoin Defendant's conduct, Plaintiff will sustain irreparable damage. This district has recognized that if injunctive relief can provide a more complete remedy than damages alone, injunctive relief is warranted to address irreparable harm. Specifically, this district has held that injunctive relief is warranted "if the remedy at law is

6

not clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Maude v. General Motors Corp.*, 626 F. Supp. 1081, 1087 (W.D. Mo. 1986) (quoting *Hughes v. Neely*, 332 S.W.2d 1, 7 (Mo. 1960)).

Defendant's wrongful conduct and breach of the Agreements between the parties is designed to disrupt Plaintiff's relationship with its clients and cause it to lose good will. Defendant is competing against Plaintiff for its current and prospective clients. Monetary relief will not adequately protect Plaintiff's interests in these relationships, and it cannot fully remedy Plaintiff's loss of good will, confidential information and other legitimate business advantage. Without a permanent injunction, Plaintiff faces the real possibility that it will lose a substantial part, if not all, of the business it purchased and developed over the past years. *See Associated Producers Co. v. City of Independence*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986) (explaining that the loss of business "threatening the very existence of an enterprise" constitutes irreparable harm sufficient to justify injunctive relief); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (substantial loss of business justifies injunctive relief because, without such relief, "a favorable final judgment might well be useless.").

In addition to access to Plaintiff's client base, Defendant had access to – and has wrongfully retained – Plaintiff's confidential and proprietary information, its phone number and its assets, which allows him to unfairly compete with Plaintiff at his present office – a former H&R Block location. As the court noted in *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264 (8th Cir. 1978), it is "unrealistic" to expect Defendant not to attempt to utilize Plaintiff's confidential information for the benefit of his own business, especially where, as here, he has already done so. Based on the authority cited and the facts of this case, this factor strongly favors entry of a permanent injunction.

7

Case 4:15-cv-00211-SRB   Document 21   Filed 09/22/15   Page 7 of 13

### 3. Balancing of Potential Harms

This factor likewise weighs in favor of Plaintiff. The restraints being placed on Defendant are no greater than those to which he already agreed. Moreover, whereas the injury threatened to H&R Block will be irreparable, any injury to Defendant (which is unlikely) would be minimal and could be remedied by an award of damages.

### 4. Public Interest

This factor also weighs in favor of Plaintiff, as Missouri courts have held that the enforcement of restrictive covenants serves the public interest. *See, e.g., Osage Glass*, 693 S.W.2d at 75; *Joseph*, 900 S.W.2d at 648. The public interest is also furthered by preserving contractual relationships. *Walters v. M & I Marshall & Ilsley Bank*, 2009 WL 2069581, at *3 (W.D. Mo. July 14, 2009); *see Silvers, Asher, Sher, & McLaren, M.D.s Neurology, P.C. v. Batchu*, 16 S.W.3d 340, 345 (Mo. Ct. App. 2000) (quoting *Schott v. Beussink*, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997)).

For the foregoing reasons, the Court finds that Plaintiff is entitled to entry of a permanent injunction enjoining Defendant to require his specific performance of the Agreements and to prohibit him from violating the terms of the same.

### B. Accounting of Revenues and Payment of Royalties

The Court also finds that Defendant is entitled to an accounting of revenues and payment of royalties pursuant to § 12(d) of the FLAs between the parties. Section 12(d) provides in relevant part as follows:

> If [Haworth] violates any provision of this Section 12 ["Limitations on Competition and Disclosure"], [H&R] Block shall be entitled to an accounting of revenues and payment of royalties pursuant to Section 6 with respect to those revenues, if any, derived from the preparation of tax returns or performance or sale of other products or services the same as or similar to any Authorized

> Services in violation of this Section 12, such payments to continue for two years or the remainder of the term of this Agreement, whichever is longer.

Ver. Compl. at Ex. A § 12(d).

As discussed above, having defaulted in this case, Defendant is deemed to have admitted all of the factual allegations of Plaintiff's Verified Complaint – including the allegations showing that Defendant's conduct violated the "Limitations on Competition and Disclosure" contained in § 12 of the FLAs, *see* Ver. Compl. ¶¶ 28, 42-67, 74 – and has no standing to contest H&R Block's right to recovery thereon. Fed. R. Civ. P. 8(b)(6); *Marshall*, 616 F.3d at 852; *Brown*, 477 F.2d at 531. The Court thus finds that Plaintiff is entitled to the remedy specified in § 12(d) of the FLAs, i.e., an accounting of revenues and payment of royalties with respect to those revenues Defendant derived from his violations of § 12 of the FLAs.

### C. Compensatory Damages

In support of its request for compensatory damages, Plaintiff has submitted an Affidavit from H&R Block District General Manager Gayle Rice indicating that Plaintiff has suffered at least $114,263.96 in damage as a result of Defendant's violations of the FLAs and Conversion Agreements. Rice Aff. ¶¶ 3-4. Affidavit evidence is sufficient to support an award of damages for purposes of a default judgment. *See, e.g.*, *Iron Workers St. Louis Dist. v. Arrow Fence, Inc.*, 2013 WL 991658, at *2 (E.D. Mo. 2013) ("[A] court has the discretion to determine damages based on 'detailed affidavits or documentary evidence.'") (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)); *Greater St. Louis Const. Laborers Welfare Fund v. AURA Contracting, LLC*, 2013 WL 1192583, at *2 (E.D. Mo. 2013) (same). Further, in setting the damages award, "the movant is entitled to all reasonable inferences from the evidence offered." *Int'l Painters*, 239 F. Supp. 2d at 30

(granting default judgment for, *inter alia*, damages, liquidated damages and attorney's fees and costs) (citation omitted).

Having reviewed the detailed affidavit of Ms. Rice, the Court finds ample evidentiary support for Plaintiff's request of $114,263.96 in compensatory damages, as that amount was calculated in accord with Section 12(d) of the FLA and appears to be a conservative estimate of the damages Plaintiff has suffered as a result of Defendant's breach of the Agreements. Indeed, the evidence tendered indicates it is likely an understatement of H&R Block's actual injuries.

### D. Attorney's Fees and Costs

Plaintiff also seeks recovery of attorney's fees, costs, and other expenditures in this action in the amount of $26,950.00. In support of this award, Plaintiff has submitted an affidavit from its counsel of record, Anthony Durone, which states that Plaintiff has incurred attorney's fees, costs and expenses in excess of the requested amount. Durone Supp. Aff. ¶ 3. Plaintiff also refers the Court to § 16(a) of the FLAs, in which Defendant agreed to pay "all damages, costs and expenses, *including reasonable attorney's fees*, incurred by [Plaintiff] as a result of" a default or breach by Defendant resulting in termination of the FLAs. Ver. Compl. at Ex. A § 16(a) (emphasis added).

It is well established that "when a contract specifically provides that a party must pay all costs and expenses related to litigation and other legal proceedings, attorney's fees are recoverable." *Champion Sports Ctr., Inc. v. Peters*, 763 S.W.2d 367, 371 (Mo. App. 1989) (pursuant to substantially similar indemnification/hold harmless provision, affirming, among other relief, award of costs and attorney's fees incurred in connection with action to enforce noncompetition covenant included in agreement for the sale of defendant's business). Accordingly, the Court finds that the award for attorney's fees, costs, and expenses requested by

Plaintiff is recoverable under the FLA between the parties. The Court further finds that the amount requested is amply supported by the Affidavit of Mr. Durone and is a reasonable award of fees for the work done in this case. Plaintiff is entitled to $26,950.00 in attorney's fees, costs, and expenses from Defendant.

### E. Post-Judgment Interest

Plaintiff finally requests post-judgment interest on all amounts awarded in damages. Under 28 U.S.C. § 1961, interest is allowed "on any money judgment in a civil case recovered in district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." This statute applies to actions, like this one, based on diversity of citizenship. *Mobil Exploration & Producing N. Am., Inc. v. Graham Royalty Ltd.*, 910 F.2d 504, 509 (8th Cir. 1990). Accordingly, the Court orders Defendant to pay Plaintiff post-judgment interest accruing from the date of judgment until all damages are paid in full, at the rate specified in 28 U.S.C. § 1961.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Dale E. Haworth, his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of the foregoing, are **PERMANENTLY RESTRAINED** from doing any of the following:

1. from violating the terms of the FLAs and Conversion Agreements, including without limitation the "Limitations on Competition and Disclosure" contained in Section 12 of the FLAs and Section 8 of the Conversion Agreements;

2. for a continuous, uninterrupted period of two years, through and until at least May 7, 2016, directly or indirectly, from:

   a. soliciting former clients of the franchise business;

   b. engaging in the commercial preparation of tax returns or the performance of related services within 25 miles of the former Franchise Territory, as defined by Section 1 and Exhibit A to the FLAs;

3. from retaining, using and disclosing trade secret, proprietary, confidential, and non-public information and materials acquired from H&R Block or by virtue of the operation of the Agreements, including, but not limited to, all client information and files used or developed in the franchise business;

4. from using the Licensed Marks, including without limitation the "H&R Block" name, H&R Block's green square logo, and any other trade names, trademarks, service marks, slogans, designs, signs, or emblems of H&R Block;

5. from representing to the public (directly or by implication) that Defendant is associated with H&R Block or remains an authorized H&R Block franchisee; and

6. from withholding assignment of the leases and telephone numbers for the franchise offices operated under the FLAs.

**IT IS FURTHER ORDERED** that Defendant shall specifically perform his contractual obligations to Plaintiff under the Agreements, including without limitation, his obligations to:

   a. assign to Plaintiff the leases for the former franchise business locations, including without limitation the office at 3331 North Ware Road, McAllen, TX 78501;

  b. transfer to Plaintiff the telephone numbers used by the former franchise business, including without limitation (956) 994-9942;

  c. return all information, materials, and property due to Plaintiff under the Agreements; and

  d. provide an accounting of revenues and make payment of royalties pursuant to Section 12(d) of the FLAs.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff $114,263.96 in compensatory damages as a result of Defendant's violations of the FLAs and the Conversion Agreements.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff $26,950.00 in attorney's fees, costs, and expenditures related to this action.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff post-judgment interest accruing from the date of this Order until all damages are paid in full "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," in accordance with 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

               _S.R.B._
              UNITED STATES DISTRICT COURT JUDGE

DATE: Sept. 22, 2015